# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>DENNIS WAYNE SOMERVILLE,<br><br>Petitioner. | No.  53586-6-II<br><br>UNPUBLISHED OPINION |

WORSWICK, J. — In this untimely personal restrain petition (PRP), Dennis Somerville challenges his judgment and sentence after he was convicted of first degree rape for conduct in connection to a 1998 robbery where he raped an employee.  Deoxyribonucleic acid (DNA) evidence in 2002 led to his arrest and conviction.  At trial, Somerville's attorney did not challenge the State's scientific evidence.  In 2018, the United States Supreme Court decided *McCoy v. Louisiana*,[1] which held that defendant had a right to autonomy under the Sixth Amendment which allowed him to insist that counsel refrain from admitting at trial that defendant committed the crime.  Although Somerville filed this PRP after the one year time limit, he argues that his PRP is timely because *McCoy* is a significant change in the law material to his case that requires retroactive application.  Somerville then argues that his conviction should be vacated because he was denied his constitutional right to autonomy.  We dismiss this PRP as time barred.

---

[1] ___ U.S. ___, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018).

FACTS

## I. THE CRIME

In October, 1998, Dennis Somerville entered a beauty supply store in Olympia. Somerville announced to the two women in the store that he was committing a robbery and warned them that he had a gun. After Somerville took money from the register, he directed one woman to go into the bathroom. Somerville then pushed down the other woman, DW,[2] and forced his penis into her mouth. Somerville fled the scene and was not apprehended at that time. DNA evidence was collected from DW, which led to identifying Somerville as the perpetrator.

## II. THE TRIAL

The State charged Somerville with first degree rape. At trial, Somerville's defense counsel stated during his opening statement that "essentially, we are not going to have a lot to say. . . . [F]rankly, we don't have argument with the State's science here or the handling of their evidence. . . . I'm not anticipating defense evidence about the science." Br. of Resp't (App. O at 3-4). Defense counsel explained to the jury that their focus during the trial should be on whether there was reasonable doubt that a threat was made to DW, and if there was any evidence of a gun.

At closing argument, defense counsel told the jury that "assuming the defendant did the crime" there was reasonable doubt as to whether or not there was a threat to use a gun, and so it was "at worst a rape in the second degree, not a rape in the first degree." Br. of Resp't (App. P at

---

[2] We refer to DW by her initials to protect her privacy.

342). Defense counsel also told the jury to consider that the State did not introduce evidence to rule out that the DNA evidence attributed to Somerville could have been attributed to an identical twin. There is nothing in the record on review that suggests that defense counsel admitted Somerville's guilt, or that Somerville objected to or expressed protestations about his lawyer's trial strategy either before or during trial.[3]

The jury found Somerville guilty of first-degree rape. In September 2002, Somerville was sentenced to a 300-month term of confinement in the custody of the Department of Corrections.

### III. PROCEDURAL HISTORY

We affirmed Somerville's conviction in January, 2004. Somerville filed a petition for review which was denied. His case became final on December 20, 2004, when the Supreme Court issued its mandate after denying review of this court's decision affirming his conviction. RCW 10.73.090. Somerville has since filed eight PRPs challenging his conviction, all of which have been dismissed. In May 2019, Somerville filed this PRP. Somerville attached a declaration to his petition that states in part:

> During opening statements, my attorney conceded to the jury that I had sex with the complaining witness without her consent. . . . I did not expect my attorney to make this concession. We did not discuss it and I most definitely did not authorize him to do so.

---

[3] Somerville argues that his counsel conceded that he sexually assaulted the store clerk "contrary to Somerville's case objective," PRP at 3, and "despite [his] objection." Reply in Support of PRP at 5. But the record on review does not support his statement that he objected or that he asserted a case objective of his defense to his counsel.

PRP at 11 (Decl. of Dennis Somerville).

The declaration does not mention defense counsel's closing argument or state that Somerville at any time instructed defense counsel not to concede guilt.

ANALYSIS

Somerville argues that his petition is timely because an exception to the time bar under RCW 10.73.100 applies to his case. Specifically, Somerville argues that *McCoy v. Louisiana*, constitutes a significant change in the law that is material to his case and applies retroactively. 138 S. Ct. at 1500. Because Somerville cannot show that *McCoy* is material to his case, we hold that Somerville's PRP is untimely.

I. LEGAL PRINCIPLES

PRPs are subject to time limitations. RCW 10.73.090. "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). However, this limit does not apply if the petition is based solely on one or more of the statutory exceptions to the time limit listed in RCW 10.73.100. *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 349-51, 5 P.3d 1240 (2000) *disagreed with on other grounds by In re Pers. Restraint of Turay*, 153 Wn.2d 44, 101 P.3d 854 (2004). RCW 10.73.100(6) places three conditions on a petitioner to overcome the one year time bar: (1) a significant change in the law (2) that is material and (3) that applies retroactively. *In re Pers. Restraint of Colbert*, 186 Wn.2d 614, 619, 380 P.3d 504 (2016).

To resolve this case, we review two related United States Supreme Court cases: *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004); *McCoy v. Louisiana*, 138 S. Ct. at 1500. These cases address a defendant's Sixth Amendment right to insist that his or her defense counsel refrain from admitting that defendant committed the crime with which he or she is charged.

A.      *McCoy v. Louisiana*

On May 14, 2018, the United States Supreme Court decided *McCoy v. Louisiana*, a case asking "whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's intransigent and unambiguous objection." 138 S. Ct. at 1507. The Supreme Court announced for the first time that defendants possess a Sixth Amendment right of autonomy to assert innocence as the objective of their defense. *McCoy*, 138 S. Ct. at 1508. The court held that it was a structural error incompatible with the Sixth Amendment for a trial court to allow counsel to concede guilt despite a defendant's insistent objections. *McCoy*, 138 S. Ct. at 1511.

McCoy was charged with three counts of first degree murder. *McCoy*, 138 S. Ct. at 1506. Two weeks before the trial, McCoy had "adamantly objected to any admission of guilt" and was "furious" when his lawyer told him his plan to concede guilt and go for a more lenient punishment. 138 S. Ct. at 1505-07. McCoy communicated his complete and total opposition to that concession, and pressed his lawyer to instead seek an acquittal. Two days before trial, facing a loggerhead of disagreement over the objective of their case, both McCoy and his lawyer sought leave of court to terminate the representation, but the court refused. 138 S. Ct. at 1506.

Despite McCoy's adamant objections, defense counsel expressly conceded McCoy's guilt, stating during opening statements at trial, that there was "no way reasonably possible" that the jury could hear the prosecution's evidence and reach "any other conclusion than [the defendant] was the cause of these individuals' death." 138 S. Ct. at 1506. McCoy protested, telling the court that his lawyer was "selling [him] out," but the trial court overruled the objection and allowed counsel to continue. 138 S. Ct. at 1506 (alteration in original). Counsel then stated that the evidence was "unambiguous . . . my client committed three murders." 138 S. Ct. at 1507. Notwithstanding his counsel's concessions of guilt, McCoy testified to his innocence and pressed his alibi on the stand. 138 S. Ct. at 1507. At closing, McCoy's lawyer reiterated that McCoy was the killer, and even told the jury that he "took [the] burden off of [the prosecutor]" on that score. 138 S. Ct. at 1507. The jury returned a unanimous verdict of guilty on all three counts. 138 S. Ct. at 1507. Then, at the penalty phase of the trial, McCoy's lawyer again conceded that "McCoy committed these crimes," but that they should show mercy in view of "serious mental and emotional issue." 138 S. Ct. at 1507. The jury returned three death penalty verdicts. 138 S. Ct. at 1507.

The United States Supreme Court reversed McCoy's conviction. *McCoy*, 138 S. Ct. at 1512. In doing so, the Supreme Court distinguished its prior case of *Florida v. Nixon*, another guilt concession murder trial case. 543 U.S. at 175.

In *Nixon*, the defendant remained silent and did not object or protest when his lawyer conveyed to him before their trial that they would pursue a guilt concession strategy at trial in order to obtain a lighter sentence during the penalty phase. 543 U.S. at 181. The court used a

6

traditional *Strickland v. Washington*[4] ineffective assistance of counsel analysis to conclude that a concession of guilt was not in violation of the defendant's constitutional rights when counsel did not obtain express consent but where the defendant did not object or express protestations when counseled on the concession strategy before trial. *Nixon*, 543 U.S. at 189. The *McCoy* court further held that Nixon's silent acquiescence to the guilt concession strategy in *Nixon* did not raise the client's autonomy as an issue in that case. *McCoy*, 138 St. Ct. at 1509. This is in contrast to *McCoy*, where "the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative." 138 S. Ct. at 1511.

a. *Material to the Conviction*

The one-year time limit to file a PRP does not apply where there has been a significant change in the law, and where that change is "material" to the petitioner's conviction, sentence, or other order. RCW 10.73.100(6). In other words, the change must affect a materially determinative issue in the petition. *In re Pers. Restraint of Turay*, 150 Wn.2d 71, 83, 74 P.3d 1194 (2003); *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000). Somerville argues that *McCoy* is a material change in the law that is material to his conviction. We hold that *McCoy* is not material to his conviction because defense counsel did not concede guilt and because Somerville never objected to counsel's tactics.

---

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

First, the alleged concession made by Somerville's attorney in the instant case stands in stark contrast with the direct and precise admission of guilt made by counsel in *McCoy*. McCoy's counsel made it unequivocally clear that he was conceding that McCoy committed first degree murder. Counsel in *McCoy* stated that there was "no way reasonably possible" that the jury could hear the prosecution's evidence and reach "any other conclusion than [McCoy] was the cause of these individuals' death. . . ." and "my client committed three murders." 138 S. Ct. at 1506-1507. Here, Somerville's counsel made general statements that did not admit guilt. For example, he said, "[E]ssentially, we are not going to have a lot to say. . . . [F]rankly, we don't have argument with the State's science here or the handling of their evidence. . . . I'm not anticipating defense evidence about the science." Br. of Resp't (App. O at 3-4). The *McCoy* court does not explain what kind of concession rises to the level of conceding guilt, but it does distinguish between conceding an element of a charged offense, and "intractable disagreements about the fundamental objective of the defendant's representation." 138 S. Ct. at 1510.

Somerville argues that counsel "effectively conceded, in both opening and closing, the actus reus of the charged offense." Reply in Support of PRP. But even if this was true, a crime also requires a mens rea element.[5] We hold that defense counsel's conduct at trial did not indicate a concession of guilt rising to the level recognized in *McCoy*.

---

[5] Moreover, it does not appear that counsel conceded the actus reus of rape in closing. Somerville's attorney argued that the State had not ruled out that Somerville had an identical twin. Our review of the record reveals that defense counsel merely decided not to contest the conclusions of the experts who determined that the DNA gathered from the victim matched Somerville's.

Defense counsel's opening statement acknowledged the anticipated weight of the State's scientific evidence and appeared to be a tactic to assuage the jury's surprise or disappointment with respect to the lack of counter evidence. Unlike in *McCoy*, defense counsel never conceded that Somerville was guilty of a crime. We note that during closing argument, defense counsel made an argument against first degree rape, assuming *arguendo* that Somerville was the perpetrator, but that argument was not a concession of guilt. Counsel here never conceded guilt such that *McCoy* could apply.

Second, Somerville never made any "intransigent and unambiguous objection" to his lawyer's strategy to concede the weight of the State's evidence or his potential guilt as to first degree rape. *McCoy*, 138 S. Ct. at 1507. Somerville's declaration states only that he "did not expect [defense counsel] to make this concession," that "[they] did not discuss it," and that he "most definitely did not authorize him to do so." PRP at 11 (Decl. of Dennis Somerville).

*McCoy* points to *Nixon* for the proposition that counsel has a duty to develop a trial strategy and discuss it with his or her client, but *McCoy*, the case Somerville relies on as new law, does not hold that there is an inherent violation of a defendant's autonomy to decide a defense objective if that first duty is violated. *McCoy*, 138 S. Ct. at 1509. McCoy's lawyer violated McCoy's autonomy only because he knew that McCoy objected to the guilt concession strategy and proceeded to concede guilt anyway. Here, there is no indication that defense counsel knew of any objection to an alleged concession strategy.

We hold that *McCoy* is not materially determinative to an issue in this PRP because the facts in the record do not invoke *McCoy*. The facts do not establish that Somerville's counsel

9

conceded guilt or that Somerville "expressly assert[ed] that the objective of '*his* defense' [wa]s to maintain innocence of the charged criminal acts." *McCoy*, 138 S. Ct. at 1509 (quoting U.S. CONST. amend. VI). Even if we were to hold that *McCoy* was a significant change in the law, we hold that it would not affect Somerville's conviction based on the record before this court.

Somerville has not shown that *McCoy* is material to his conviction, thus his PRP is untimely. Because Somerville fails on materiality, we do not examine whether *McCoy* is a significant change in the law and whether it applies retroactively. We dismiss Somerville's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

_____
Melnick, J.

_____
Cruser, J.